UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRIS CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:10-cv-01009 |
| | ) | Judge Haynes |
| SONYA TROUTT, et al., | ) | Magistrate Judge Bryant |
| | ) | |
| Defendants. | ) | |

**TO:  The Honorable William J. Haynes, Jr.**

## REPORT AND RECOMMENDATION

Defendant Judge Dee David Gay filed his motion for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (Docket Entry No. 27), to which Plaintiff responded in opposition, (Docket Entry No. 49). Defendants Tara Wyllie and C. Wayne Hyatt filed their motion for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, (Docket Entry No. 39), to which Plaintiff responded in opposition (Docket Entry No. 66).

These motions have been referred to the undersigned Magistrate Judge for a report and recommendation. (Docket Entry No. 12).

For the reasons stated below, the undersigned Magistrate Judge recommends that Defendant Gay's and Defendants Wyllie's and Hyatt's motions to dismiss be **GRANTED**.

STATEMENT OF THE CASE

Plaintiff Chris Chapman, proceeding pro se, filed this action while incarcerated awaiting trial in the matter of State of Tennessee v. Christopher Scott Chapman, No. 833-2008. (Docket Entry No. 1). Plaintiff named Judge Dee David Gay, Criminal Court Judge for Sumner County,

-1-

Tennessee, and Assistant District Attorneys General Tara Wyllie and C. Wayne Hyatt as defendants in this action. (Docket Entry No. 1).

Plaintiff alleges Defendants acted under color of state law and violated his rights under the United States Constitution, to include his First and Fourteenth Amendment rights. (Docket Entry No. 1). Plaintiff's allegations stem from the filing, arguing, and granting of a motion to transfer Plaintiff for safekeeping pending trial, pursuant to section 41-4-121 of the Tennessee Code. (Docket Entry No. 1). Plaintiff requests a declaratory order, injunctive relief, compensatory damages, and punitive damages. (Docket Entry No. 1).

Defendants move this Court to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry Nos. 27, 39). Defendants, in memoranda in support of their motions to dismiss, argue the following: (1) the Rooker-Feldman doctrine prevents this Court from having subject matter jurisdiction; (2) Plaintiff failed to state either a First or Fourteenth Amendment claim upon which relief can be granted under Twombly and Iqbal; (3) Younger abstention bars the injunctive and declaratory relief sought by Plaintiff; (4) the Eleventh Amendment bars claims against Defendants acting in their official capacity as state officials, as the Ex parte Young exception does not apply; (5) Plaintiff's section 1983 claim against Defendants in their official capacity fails as they are not "persons" under the statute; and (6) Defendants are entitled to either judicial or prosecutorial immunity for their actions. (Docket Entry Nos. 27, 28, 39, 40).

This report addresses only the jurisdictional and immunity arguments, as these are sufficient grounds to require dismissal of the claims against Defendants Gay, Wyllie, and Hyatt.

## SUMMARY OF PERTINENT FACTS

Between August 19, 2008 and April 8, 2010, officials with the Sumner County Sheriff's Department documented fifteen disruptive incidents involving Plaintiff at the Sumner County Jail while he was awaiting his criminal trial. (Docket Entry No. 39-1 at 3). On April 30, 2010, Defendants Wyllie and Hyatt filed a motion to transfer Plaintiff to the Tennessee Department of Correction for safekeeping, pursuant to section 41-4-121 of the Tennessee Code. (Docket Entry No. 39-1).

On May 10, 2010, Defendant Judge Gay conducted a hearing on the motion to transfer Plaintiff. (Docket Entry No. 39-2). Plaintiff was represented by defense counsel and the State of Tennessee was represented by Defendants Wyllie and Hyatt. (Docket Entry No. 39-2). After hearing from witnesses, including both the Sumner County Jail administrator and the records custodian, Judge Gay granted the motion to transfer. (Docket Entry No. 39-2). In granting the motion, the court found the section 41-4-121 requirements for transfer to a Department of Correction facility were met and found Plaintiff to be a "menacing and disruptive force inside the jail due to his cussing officers, being disrespectful of jail personnel, refusing to follow the legitimate rules of the jail, being belligerent and threatening to assault officers working in the jail." (Docket Entry No. 39-2).

Plaintiff subsequently filed his Complaint in the United States District Court for the Middle District of Tennessee. (Docket Entry No. 1). In his Complaint, Plaintiff alleges that Judge Gay violated the Code of Judicial Conduct in granting the motion to transfer and that the transfer order falsely imprisoned Plaintiff. (Docket Entry No. 1). Furthermore, Plaintiff alleges that Wyllie and Hyatt "maliciously prosecuted" the motion "using references to fraudulent documents, fraudulent testimony, and irrelevant and bewildering accusations." (Docket Entry No. 1). Plaintiff bases his

allegations on his claim that he was exercising his First Amendment right of free speech. (Docket Entry No. 1). Nothing in the record indicates Plaintiff pursued any appeal of the motion to transfer in the Tennessee appellate courts.

ANALYSIS

A.   Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for lack of subject matter jurisdiction, while Rule 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.

When challenging a court's subject matter jurisdiction under Rule 12(b)(1), a defendant may either facially attack the plaintiff's complaint by testing the sufficiency of the pleading itself, or by arguing the existence or non-existence of facts that would deprive a court of subject matter jurisdiction. See Johnson v. Smoot, No. 3:08–0515, 2009 WL 890035, at *5 (M.D. Tenn. Mar. 30, 2009). A motion raising the defense of Eleventh Amendment sovereign immunity may be analyzed under Rule 12(b)(1), as a factual attack on the court's jurisdiction, wherein no presumption of truth applies to the complaint's allegations and the court is free to weigh the evidence on both sides in order to satisfy itself of the existence of jurisdiction. Oshop v. Tenn. Dep't of Children's Serv., 2009 WL 1651479, at *2-3 (M.D. Tenn. June 10, 2009). On such a motion, the burden is on the State defendant to prove that it is entitled to immunity. Nair v. Oakland County Cmty. Mental Health Auth., 443 F.3d 469, 474 (6th Cir. 2006).

Rule 12(b)(6) permits a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). A complaint fails to state a claim, and dismissal under Rule 12(b)(6) is proper, where

the individual defendants are immune from suit. See Koubriti v. Convertino, 593 F.3d 459, 472 (6th Cir. 2010) (involving prosecutorial immunity); Temple v. Celebrezze, 93 Fed. Appx. 802, 803 (6th Cir. 2004) (involving judicial immunity).

In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id. A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." Id. at 555, 570; see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007).

Finally, while pro se complaints are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Williams v. Browman, 981 F.2d 901, 903 (6th Cir. 1992) (pro se pleadings should be construed more liberally than pleadings drafted by lawyers), that liberality does not allow a court to conjure up unpled facts. Smoot, 2009 WL 890035, at *5 (citing McFadden v. Lucas, 713 F.2d 143, 147 n.4 (5th Cir. 1983)); see also Clark v. National Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975) (emphasizing there is "no duty (on the part) of the trial court . . . to create a claim . . . not spelled out in [the] pleading.").

B.  Subject Matter Jurisdiction and the *Rooker-Feldman* Doctrine

Subject-matter jurisdiction must be addressed first as courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any

party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). Federal courts have subject-matter jurisdiction over a cause of action where there is a federal question or where there is complete diversity of citizenship among the parties and more than $75,000 is in controversy. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction arises in a controversy over a constitutional right, as alleged by Plaintiff here, (Docket Entry No. 1), or a federal law. 28 U.S.C. § 1331. However, given the nature of the complaint and the absence of any indication that Plaintiff pursued an appeal of the state court's transfer order within the state courts before filing his complaint in federal court, the initial question is whether this action is an appeal barred under the Rooker-Feldman doctrine.

The Rooker-Feldman doctrine "bars a losing party in state court 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the party's claim that the state judgment itself violates the loser's federal rights.'" Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 287 (2005) (quoting Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994)); see also Marks v. Tennessee, 554 F.3d 619, 622 (6th Cir. 2009) ("lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments."). The basis of the doctrine is that "28 U.S.C. § 1257 precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, . . . § 1331 (federal question) . . . [b]ecause § 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court." Exxon, 544 U.S. at 291-92. The doctrine applies to more than just final state court judgments as the Sixth Circuit has "concluded that the Rooker-Feldman doctrine [also applies] to interlocutory orders and to orders of lower state courts." Pieper v. American Arbitration Ass'n,

Inc., 336 F.3d 458, 462 (6th Cir. 2003).

In Exxon, the Supreme Court refocused the lower courts' view of the Rooker-Feldman doctrine by explaining that its applicability "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon, 544 U.S. at 284. As a result, the doctrine denies access to federal district courts to parties who file in federal court "essentially seeking a review of a state-court decision." Kovacic v. Cuyahoga County Dep't of Children & Family Serv., 606 F.3d 301, 308 (6th Cir. 2010). In its analysis, the Supreme Court emphasized that "a district court could not entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was 'inextricably intertwined' with the state court's judgment." Exxon, 544 U.S. at 286 n.1 (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983)). The Supreme Court recently provided a more succinct explanation by stating, "a state court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." Skinner v. Switzer, 131 S.Ct. 1289, 1298 (2011).

Post-Exxon, the Sixth Circuit has "distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which Rooker-Feldman applies—and plaintiffs who assert independent claims before the district court—situations in which Rooker-Feldman does not apply." Lawrence v. Welch, 531 F.3d 364, 368 (6th Cir. 2008) (citing McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006)). The phrase 'inextricably intertwined' discussed in Exxon "only describes the conclusion that a claim asserts an injury whose

source is the state court judgment, a claim that is thus barred by Rooker-Feldman." McCormick, 451 F.3d at 394-95. Therefore, the pertinent inquiry is whether the "source of the injury" is the state court decision. Lawrence, 531 F.3d at 368. "If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." McCormick, 451 F.3d at 393. When the distinction was applied in McCormick, the court concluded that the "plaintiff's claims that certain defendants committed fraud and misrepresentation in the course of state . . . proceedings did not allege an injury caused by the state court judgment and . . . were not barred by Rooker-Feldman." Lawrence, 531 F.3d at 369 (citing McCormick, 451 F.3d at 392); see also Todd v. Weltman, Weinberg & Reis Co., 434 F.3d 432, 437 (6th Cir. 2006) (determining claims of improper conduct by defendant did not allow Rooker-Feldman to preclude subject-matter jurisdiction). However, a "plaintiff's claim that the [state] court's order . . . violated her constitutional rights . . . [is] barred because 'the count alleges that the state court order itself was illegal and harmed Plaintiff.'" Lawrence, 531 F.3d at 369 (quoting McCormick, 451 F.3d at 395). Essentially, if the plaintiff asserts an independent claim, where the source of the injury is anything but the state court's judgment, a federal court's assertion of subject matter jurisdiction is proper. Kovacic, 606 F.3d at 309.

1. This Court's Subject-Matter Jurisdiction with Regard to Defendant Judge Gay.

In filing his Complaint in federal court, Plaintiff alleges Judge Gay violated his First and Fourteenth Amendment rights, though Plaintiff does not describe how this occurred in the Complaint (Docket Entry No. 1 at 6, ¶ 2). Plaintiff also alleges Judge Gay violated the Code of Judicial Conduct in granting the motion to transfer Plaintiff from Sumner County Jail to the Tennessee

Department of Correction for safekeeping, presumably through the alleged violations of the First and Fourteenth Amendments, and that the transfer order falsely imprisoned Plaintiff (Docket Entry No. 1 at 6, ¶ 2). Though it is not entirely clear what relief Plaintiff specifically seeks from Judge Gay as a defendant, Plaintiff's request for injunctive and declaratory relief from all defendants (Docket Entry No. 1 at 6, 8) implicates relief from Judge Gay's transfer order.

Based on Plaintiff's allegations in the Complaint against Judge Gay, it is clear that any injury to Plaintiff conceivably caused by Judge Gay results from this transfer order and therefore, the order is the "source of the injury" as contemplated by McCormick. Judge Gay issued his order after a full judicial hearing on the matter (Docket Entry No. 39-2), and as a result, the transfer order qualifies as a state court judgment. See Pieper, 336 F.3d at 462. Because Plaintiff does not challenge the statute governing the decision, Tennessee Code section 41-4-121, in his Complaint, but instead, in substance, the decision itself, this Court cannot review the transfer order at the heart of the claim against Judge Gay. See Skinner, 131 S.Ct. at 1298. When the facts of this case are viewed against the analytical framework of Exxon, the Rooker-Feldman doctrine clearly prevents this Court from having subject-matter jurisdiction over the claims against Judge Gay. This case was brought by Plaintiff, a state-court loser, complaining of injuries caused by the transfer order, a state-court judgment, rendered before the filing in district court, and Plaintiff now invites district court review and rejection of the judgment through declaratory and injunctive relief. See Exxon, 544 U.S. at 284. Therefore, the undersigned concludes that the claims against Defendant Gay should be dismissed for lack of subject-matter jurisdiction pursuant to Rooker-Feldman.

2.      This Court's Subject-Matter Jurisdiction with Regard to Defendants Wyllie and Hyatt.

In filing his Complaint in federal court, Plaintiff alleges Defendants Wyllie and Hyatt,

Assistant District Attorneys General, violated his First and Fourteenth Amendment rights, though Plaintiff does not describe how this occurred in the Complaint (Docket Entry No. 1 at 6, ¶¶ 1, 2). However, Plaintiff also alleges Defendants Wyllie and Hyatt maliciously prosecuted him through their use of "fraudulent documents, fraudulent testimony, and irrelevant and bewildering accusations." (Docket Entry No. 1 at 6, ¶ 2). Though it is not entirely clear what relief Plaintiff specifically seeks from Defendants Wyllie and Hyatt, Plaintiff's request for injunctive and declaratory relief from all defendants (Docket Entry No. 1 at 6, 8) implicates relief from the transfer order.

Because Plaintiff alleges misconduct and fraud in their actions, the Rooker-Feldman analysis shifts for Defendants Wyllie and Hyatt. The Sixth Circuit has established that Rooker-Feldman does not apply to plaintiffs who assert independent claims before the district court, Lawrence, 531 F.3d at 368, and an independent claim is asserted if the source of injury is other than the judgment itself, such as a third party's actions. McCormick, 451 F.3d at 393. A "plaintiff's claims that certain defendants committed fraud and misrepresentation in the course of state . . . proceedings [do] not allege an injury caused by the state court judgment and . . . [are] not barred by Rooker-Feldman." Lawrence, 531 F.3d at 369. Because Plaintiff's claims against Defendants Wyllie and Hyatt allege the source of the injury to be their conduct and not just the state court judgment, the Rooker-Feldman doctrine does not apply to the claims against these Defendants. Therefore, this Court possesses subject-matter jurisdiction with regard to the federal question claims lodged against Defendants Wyllie and Hyatt.

C.      The Eleventh Amendment and Sovereign Immunity in Official Capacity Suits.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity of the states, however, is not solely "derive[d] from, nor [] limited by, the terms of the Eleventh Amendment," Alden v. Maine, 527 U.S. 706, 713 (1999). Sovereign immunity extends to actions brought against a state by its own citizens. Hans v. Louisiana, 134 U.S. 1, 15 (1890); Dixon v. Clem, 492 F.3d 665, 673 (6th Cir. 2007). Additionally, "[s]overeign immunity applies not only to the states themselves, but also to 'state instrumentalities' or . . . government entities that act as 'arm[s] of the State.'" S.J. v. Hamilton County, Ohio, 374 F.3d 416, 419 (6th Cir. 2004) (quoting Regents of Univ. of Calif. v. Doe, 519 U.S. 425, 429 (1997); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).

When suits are filed against state officials in their official capacity, they "should be treated as suits against the State," Hafer v. Melo, 502 U.S. 21, 25 (1991), because in an action against a state officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir. 1993). Therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Generally, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 381 (6th Cir. 1993). However, an exception set forth in Ex parte Young allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." Thiokol, 987 F.2d at 381 (describing the holding of Ex parte Young, 209 U.S. 123 (1908)). Suits for damages are not permitted against state officials, but "a

federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . [because] it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." S&M Brands, Inc. v. Cooper, 527 F.3d 500, 507-08 (6th Cir. 2008) (emphasis added) (internal citations omitted). However, the Ex parte Young exception does not extend to any retroactive relief. Quern v. Jordan, 440 U.S. 332, 338 (1979). Indeed, if a plaintiff's complaint against state officials is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them . . . it [] does not come under the doctrine of Ex parte Young." Gean v. Hattaway, 330 F.3d 758, 776 (6th Cir. 2003) (dismissing plaintiffs' claim for injunctive relief from state officials after determining their complaint was based entirely on past acts).

There are "three exceptions to a state's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in Ex parte Young, applies; and (c) when Congress has properly abrogated a State's immunity." S&M Brands, 527 F.3d at 507 (also noting that raising an immunity defense in a motion to dismiss defeats any argument of waiver of the defense).

With regard to Plaintiff's claims against Defendants Gay, Wyllie, and Hyatt in their official capacities, none of the three exceptions to sovereign immunity applies. First, the State of Tennessee has not waived its immunity from section 1983 cases. Berndt v. State, 796 F.2d 879, 881 (6th Cir. 1989). Second, Congress did not abrogate a State's Eleventh Amendment immunity in passing 42 United States Code section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67-71 (1989). Third, Plaintiff does not properly request prospective injunctive or declaratory relief as permitted under the Ex parte Young exception. Plaintiff's allegations against Defendants Gay, Wyllie, and Hyatt address only past acts involving the filing, arguing, and granting of the motion to transfer

Plaintiff pending trial. (Docket Entry No. 1 at 6, ¶¶ 1, 2). Plaintiff does not seek relief from any continuing conduct of Defendants Gay, Wyllie, and Hyatt, nor does Plaintiff seek to compel any of these defendants to comply with federal law. (Docket Entry No. 1 at 8). Instead, Plaintiff seeks to compel agencies not named as defendants to conduct a sweeping investigation "of all defendants and their respective organizations." Id.

Defendant Gay, in his capacity as Criminal Court Judge for Sumner County, Tennessee, and Defendants Wyllie and Hyatt, in their capacities as Assistant District Attorneys General, are state officials. See Tenn. Code Ann. § 8-42-101(3)(A); Tenn. Code Ann. § 8-23-103; Tenn. Code Ann. § 8-7-226. Because an official capacity suit is to be treated as a suit against the entity, Kentucky v. Graham, 473 U.S. at 166, and none of the sovereign immunity exceptions applies to Plaintiff's claims, the undersigned thus concludes that Plaintiff's claims against Defendants Gay (to the extent that such claims may be found to survive the jurisdictional bar of Rooker-Feldman), Wyllie, and Hyatt in their official capacities should be dismissed. See Grinter v. Knight, 532 F.3d 567, 572 (6th Cir. 2008) (finding that when a state has not waived its sovereign immunity and defendants are state employees, "[t]o the extent [defendants] are sued in their official capacities, [a] § 1983 claim fails.").

D. Absolute Judicial and Prosecutorial Immunity from Individual Capacity Suits.

1. Judicial Immunity

"Judicial immunity" is shorthand for the absolute immunity doctrine that protects judges from suit both in their official and individual capacities. DePiero v. City of Macedonia, 180 F.3d 770, 783-84 (6th Cir. 1999). Even though a State's sovereign immunity does not preclude individual capacity suits against state officials for damages under section 1983, the judicial function is still protected by the common-law doctrine of judicial immunity. Dixon v. Clem, 492 F.3d 665, 674 (6th

Cir. 2007). Judicial immunity is expansive and provides "immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (emphasis added). In fact, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stern v. Mascio, 262 F.3d 600, 606 (6th Cir. 2001) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871)). Furthermore, judicial immunity extends beyond individual capacity suits seeking damages to those also seeking injunctive relief under section 1983 claims. Coleman v. Governor of Mich., No. 09-1139, 2011 WL 894430, at *5 (6th Cir. Mar. 16, 2011) ("By enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer."); see Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983).

The reasoning behind judicial immunity has long been settled, and the Supreme Court has explained it as so:

> If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentive for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication . . .. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

Forrester v. White, 484 U.S. 219, 226-27 (1988); see also DePiero, 180 F.3d at 783 (judicial immunity is "justified by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.").

The Sixth Circuit laid out the analytical framework for evaluating claims of judicial

-14-

immunity in <u>DePiero v. City of Macedonia</u>. <u>Dixon</u>, 492 F.3d at 674. There are only two exceptions in which absolute judicial immunity can be overcome: "[f]irst, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." <u>DePiero</u>, 180 F.3d at 784 (citing <u>Mireles</u>, 502 U.S. at 11-12).

In analyzing the first exception, the question of "[w]hether an action is judicial depends on the nature and the function of the act, not the act itself." <u>DePiero</u>, 180 F.3d at 784. The Supreme Court set out two key factors in this analysis in <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978). "First, looking to the nature of the act, courts must determine whether it is a function normally performed by a judge . . .. Second, looking to the expectations of the parties, courts must assess whether the parties dealt with the judge in his or her judicial capacity." <u>DePiero</u>, 180 F.3d at 784 (citing <u>Stump</u>, 435 U.S. at 362; <u>Mireles</u>, 502 U.S. at 13).

The second exception is when a judge acts in complete absence of jurisdiction. <u>Mireles</u>, 502 U.S. at 11-12. "A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." <u>Johnson v. Turner</u>, 125 F.3d 324, 334 (6th Cir. 1997). "Since questions regarding subject matter jurisdiction often are difficult, 'the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.'" <u>King v. Love</u>, 766 F.2d 962, 965 (6th Cir. 1985) (quoting <u>Stump</u>, 435 U.S. at 356).

In the present case, Defendant Gay, as Criminal Court Judge for Sumner County, Tennessee, held a judicial hearing on the State's motion to transfer Plaintiff for safekeeping and subsequently entered an order containing his ruling. (Docket Entry No. 39-2). These actions are functions

normally performed by a judge, and as Plaintiff was represented by defense counsel at this hearing, Plaintiff clearly dealt with Judge Gay in his official capacity. (Docket Entry No. 39-2). Judge Gay, as a criminal court judge, had jurisdiction to order the transfer conferred by statute. Tenn. Code Ann. § 41-4-121(c) ("In all cases where the jail in which a prisoner is confined becomes insufficient from any cause, any circuit or criminal judge, upon the application of the sheriff and proof of the fact, may order the prisoner, by mittimus or warrant, to be removed to the nearest sufficient jail."). Because Judge Gay's actions were within the subject matter jurisdiction of his court and judicial in nature, he is protected by the doctrine of judicial immunity. Therefore, to the extent that Plaintiff states individual capacity claims against Defendant Gay that survive the jurisdictional bar of Rooker-Feldman, dismissal of such claims is warranted.

2.     Prosecutorial Immunity

The common-law principle of absolute immunity for prosecutors acting within the scope of their duties includes immunity from section 1983 claims. Imbler v. Pachtman, 424 U.S. 409, 420, 427 (1976). The Supreme Court has reasoned that exposing a prosecutor to section 1983 lawsuits growing out of his official activity would cause the "public trust of the prosecutor's office [to] suffer if [the prosecutor] were constrained in making every decision by the consequences in terms of his own potential liability," and "if the prosecutor could be made to answer in court each time . . . a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law." Imbler, 424 U.S. at 424-25. The Court acknowledged that "this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," but still determined that prosecutors are entitled to absolute prosecutorial immunity for any conduct relating to "initiating

a prosecution and . . . presenting the State's case." Id. at 427, 431. The only exception to absolute immunity is if a prosecutor acts as an administrator or investigator "'rather than as an officer of the court[,]' [then] he is entitled only to qualified immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (quoting Imbler, 424 U.S. at 431 n.33).

In Spurlock v. Thompson, the Sixth Circuit took the opportunity to clarify some circumstances in which a prosecutor is entitled to absolute immunity:

> Since the Court's decision in Imbler, courts have taken a functional approach to absolute immunity. See Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002) (looking to the "nature of the function performed, not the identity of the actor who performed it"). Using this approach, courts have concluded that a prosecutor is protected "in connection with his duties in functioning as a prosecutor." Id. Accordingly, prosecutors are absolutely immune from many malicious prosecution claims. Burns v. Reed, 500 U.S. 478, 485 n.4 (1991) (citing Yaselli v. Goff, 275 U.S. 503 (1927)). Likewise, absolute immunity is appropriate for claims based on the prosecutor's appearance at a probable cause hearing and before a grand jury. Burns, 500 U.S. at 487 n.6. Absolute immunity applies to "acts . . . includ[ing] the professional evaluation of the evidence . . . and appropriate preparation for its presentation at trial[.]" Buckley, 509 U.S. at 273. . . . As the Court concluded in Imbler, even the knowing presentation of false testimony at trial is protected by absolute immunity. 424 U.S. at 413, 430.

Spurlock v. Thompson, 330 F.3d 791, 797 (6th Cir. 2003). Additionally, pretrial acts of a prosecutor can be covered by prosecutorial immunity because "the duties of a prosecutor in his role as advocate for the State involve actions <u>preliminary to the initiation of a prosecution</u>." Beckett v. Ford, 384 Fed. Appx. 435, 451 (6th Cir. 2010) (quoting Buckley, 509 U.S. at 272) (emphasis in original). When faced with this issue, "[t]he analytical key to prosecutorial immunity . . . is <u>advocacy</u> —whether the actions in questions are those of an advocate." Spurlock, 330 F.3d at 798 (emphasis in original). The "critical inquiry is how closely related is the prosecutor's challenged activity to his <u>role as an advocate</u> intimately associated with the judicial phase of the criminal process." Id. (emphasis in original).

Defendants Wyllie and Hyatt filed, in the Criminal Court for Sumner County, a motion to transfer Plaintiff to the Tennessee Department of Correction for safekeeping. (Docket Entry No. 39-1). Defendants, as prosecutors representing the State of Tennessee, argued the motion at a judicial hearing presided over by Judge Dee David Gay. (Docket Entry No. 39-2). Plaintiff was represented by defense counsel at this hearing. Id. Because the "Government has a substantial interest in ensuring that persons accused of crimes are available for trials," Bell v. Wolfish, 441 U.S. 520, 534 (1979), and "security measures may directly serve the Government's interest in ensuring the detainee's presence at trial," Id. at 540 n.22, Judge Gay's order of transfer subsequent to the hearing is part of the judicial phase of the criminal process. See Tenn. Code Ann. § 41-4-121. As a result, the actions of Defendants Wyllie and Hyatt are clearly within the scope of their prosecutorial duties and those of an advocate intimately associated with the judicial process. Therefore, because Plaintiff's suit against Defendants Wyllie and Hyatt is based on their filing and arguing of the motion to transfer, (Docket Entry No. 1 at 6, ¶ 2), Defendants Wyllie and Hyatt are entitled to absolute immunity from suit, despite allegations of malicious prosecution. See Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010). Accordingly, the undersigned concludes that Plaintiff's claims against Defendants Wyllie and Hyatt in their individual capacities should be dismissed.

## RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Defendant Gay's and Defendants Wyllie's and Hyatt's motions to dismiss be **GRANTED** and the complaint against them **DISMISSED**, on grounds that the claims against Gay are barred by Rooker-Feldman, or alternatively by the doctrines of sovereign and judicial immunity, while the claims against Wyllie

and Hyatt are barred by the doctrines of sovereign and prosecutorial immunity.

Any party has fourteen (14) days from receipt of the Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Millon, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 1st day of June, 2011.

        s/ John S. Bryant
        JOHN S. BRYANT
        UNITED STATES MAGISTRATE JUDGE