IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRIS CHAPMAN, )
)
    Plaintiff, ) CASE NO. 3:10-1009
) JUDGE HAYNES
v. )
)
SONYA TROUTT, *et al.*, )
)
    Defendants. )

## MEMORANDUM

Plaintiff, Chris Chapman, an inmate in the Sumner County jail, filed this pro se action under 42 U.S.C. § 1983 against the Defendants:[1] Sonya Troutt, Sumner County Sheriff's Department and Sumner County. Plaintiff claims are, in essence: (1) that the Defendants improperly transferred Plaintiff from the Sumner County jail to the Riverbend Maximum Security Institution ("RMSI") in violation of his First and Fourth Amendment rights; (2) that the Defendant placed Plaintiff in administrative segregation in violation of his First and Fourteenth Amendment rights; and (3) that the Defendants denied Plaintiff his personal property upon his transfer to RMSI.

Before the Court is the remaining Defendants' motion for judgment on the pleadings (Docket Entry No. 67) contending, in sum, that assuming Plaintiff's allegations as true, Plaintiff fails to state a claim for relief. Plaintiff filed his response (Docket Entry No. 76) with extended citations to precedents, but without any explanation of how his factual allegations fit those precedents.

### A. Analysis of the Complaint

---

[1] In an earlier Order, the Court dismissed the other Defendants. (Docket Entry No. 73).

1

The factual allegations in Plaintiff's complaint that are necessary to review to decide the Defendants' motion are as follows:

Plaintiff was incarcerated on 8-8-08 and is still awaiting trial.

1. On 4-30-10, Sonay Troutt and Renee Workings, both with the (SCSD) Sumner County Sheriff's Dept., and in concert with Tara Wyllie and C. Wayne Hyatt, both with **the Sumner County Prosecutors Office, did file a motion to transfer plaintiff (Chapman) to the Tennessee Department of Corrections (TDOC)** using references to fraudulent documents, fraudulent testimony and irrelevant and bewildering accusations supplied by Sonya Troutt and Renee Workings. The basis of the allegations being plaintiff allegedly exercising his (1st) First Amendment Constitutional Right to Free Speech, violating both the 1st and 14th Amendment of USC of the plaintiff.

2. On 5-10-10 the above stated motion to transfer was maliciously prosecuted by Tara Wyllie and C. Wayne Hyall using references to fraudulent documents, fraudulent testimony, and irrelevant and bewildering accusations. The same **motion was ruled on against plaintiff (Chapman) to falsely imprison plaintiff (Chapman) by Dee David Gay who in the process violated the code of judicial conduct.** This is not the first instance of these actions by all defendants, violating plaintiffs, among many, 1st and 14th U.S.C. Amend.

3. On 4-9-09, plaintiff was placed in segregation for allegedly exercising his (1st) First Amendment Free Speech right and charged with numerous disciplinary charges violating plaintiff[']s 1st and 14th U.S.C. Amendments.

4. On 10-2-09, plaintiff was charged with various disciplinary charges which violates plaintiff[']s 14th Amendment rights while in segregation.

5. On 2-1-10 plaintiff was charged with disciplinary charges violation plaintiff[']s 1st and 14th Amendments while still in segregation.

6. On 3-17-10 plaintiff was charged with various disciplinary charges violating plaintiff[']s 1st and 14th Amendments while still in segregation.

7. On 4-8-10, plaintiff was charged with various disciplinary charges violating plaintiff[']s 1st and 14th Amendments while still in segregation.

8. ON 6-11-10 plaintiff was transfer[r]d to Riverbend Maximum Security Institution and placed in continuing segregation. Upon transfer, plaintiff was denied his personal property by the Sumner County Sheriff[']s dept. (SCSD) entailing numerous violations.

9. Plaintiff has been and still is in segregation since 4-9-09.

> Plaintiff moves the court to allow an Amend to this filing it need is found that nay part may be deficient for any reason.
>
> Plaintiff, Chris Chapman, is and was at all times since 8-8-08 and during events described a pre-trial detainee.

(Docket Entry No. 1 at p. 5, 5A) (emphasis added).

### B. Conclusions of Law

A motion for judgment in the pleadings is decided on the same standards as a motion to dismiss. Scalo v. American Airlines, 249 F.Supp.2d 176 (D. Conn. 2003). In deciding a Rule 12(b)(6) motion to dismiss, the Court can grant the motion only if the complaint's allegation "raise a right to belief above the speculative level." Bell Atlantic Corp. v. Twobly, _ U.S. _, 127 S.Ct. 1955, 1964-65 (2007). Yet, "the allegations of the complaint should be construed favorably to the pleader" Scheuer v Rhodes, 416 U. S. 232, 36 (1974) and the Court must "treat all of the well-pleaded allegations of the complaint as true". Miree v. Dekalb County, Ga., 433 U.S. 25, 27 n.2 (1977).

As to Plaintiff's transfer to RMSI, in Meachum v. Fano, 427 U.S. 215 (1976), the Supreme Court held that objections to intrastate prison transfers failed to state a claim under § 1983.

> Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.
>
> Holding that arrangements like this are within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges. We decline to so interpret and apply the Due Process Clause. The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States.

Id. at 228-29 (citation omitted). In a companion decision, the Supreme Court explained:

> As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him <u>and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight</u>. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive.

Montanye v. Haymes, 427 U.S. 236, 242 (1976) (emphasis added).

In Tennessee, state and county correction officials are authorized under state law to contract on housing state prisoners. See Tenn. Code Ann. § 41-8-103, et seq. Because state law contemplates a state prisoner's possible confinement at a prison, there is no basis for a § 1983 claim on prison transfers as a general rule. See Snider v. Thomas, 3:88-0092 (M.D. Tenn. Order filed March 21, 1988) (Order adopted Report and Recommendation).

As to Plaintiff's administrative segregation claim, in Lee v. Austin, 81 F.3d 160, 1996 WL 153918 (6th Cir. 1996), the Sixth Circuit concluded that a prisoner "had no liberty interest in remaining free from administrative segregation, because he has not shown that this condition imposed `atypical and significant hardship' on him `in relation to the ordinary incidents of prison life,' . . . <u>based on a comparison between the conditions for inmates in administrative segregation and those outside of administrative segregation; and the state's action did not affect the duration of Lee's sentence</u>." Id. (emphasis added) (quoting Sandin, full cite at 2300, 2301-02). Here, Petitioner has not made any showing his confinement was atypical of state pretrial detainees.

As to Plaintiff's claim of retaliation, prisoners possess the First Amendment right to lodge peaceful complaints about prison conditions without retaliation, Newsom v. Norris, 888 F.2d 371, 376-77 (6th Cir. 1989). In Goddard v. Sabbatine, 82 F.3d 418, 1996 WL 185777 (6th Cir. 1996), the Sixth Circuit emphasized, however, that abusive complaints by prisoners are not

4

protected. "This prohibition is defined as `[a]busive language, writing or gesture directed at an employee.' . . . The Constitution has never been interpreted as giving an inmate license to heap verbal abuse upon corrections officers. . . ." Moreover,

> A mere transfer of an inmate for filing grievances is not actionable absent a showing of actual prejudice of the right to file grievances or access to the courts.
>
> Ward attempts to circumvent the holdings of Meachum and its progeny by arguing that his transfer was in retaliation for availing himself to the internal prison grievance procedure and to the courts. Although defendants admit that Ward was transferred in part to give prison staff a respite from his continuous barrage of grievances, this reason is not an impermissible reason for a transfer. By transferring Ward, defendants were able to maintain the peaceful management of the prison by reducing the tension between the staff and Ward without discouraging him from seeking redress of his grievances.
>
> . . . Here, the prison authorities were justified in concluding that Ward's behavior during his five months at ITF evidenced his discontentment with the facilities, staff, and fellow inmates at ITF. Ward's failure to adjust was detrimental to himself and also posed a potential threat to other inmates and the staff.
>
> Although it is clearly established that prisoners have a fundamental right of access to the courts and the right to petition for a redress of grievances, Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Knop v. Johnson, 977 F.2d 996, 1002-03 (6th Cir. 1992), cert. denied, _ U.S. _, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993), Ward does not allege that these rights have been impaired. Even if defendants' actions had some effect on Ward's future filing of grievances, his transfer is permissible where it serves a legitimate penological interest. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Indeed, the prison officials' decision to transfer was upheld in Montamye, a case in which the prisoner-plaintiff alleged that he was transferred in retaliation for rendering legal assistance to other prisoners and petitioning the court for redress. Nor is it relevant that the new facility, although also a level II facility, is less desirable than the facility from which Ward was transferred. . . .
>
> . . . Ward has no constitutional right to remain at a specific facility or to prevent a transfer to another level II facility for a permissible reason . . .

Ward v. Dyke, 58 F.3d 271, 274, 275 (6th Cir. 1995).

Here, under Ward, the allegation of proximity to a transfer and the prisoner's filing of a grievance is insufficient for this First Amendment. Plaintiff has not alleged any deterrence in the assertion of his First Amendment rights. Moreover, a state court judge determined that sufficient grounds existed to transfer Petitioner to a state facility based upon the state prosecutor's motion to transfer Plaintiff. The Court cannot discern how the Defendant's compliance with the state court order constitutes retaliation against Plaintiff.

Accordingly, the Court concludes that the Defendants' motion for judgment on the pleadings should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 21st day of September, 2011.

WILLIAM J. HAYNES, JR.
United States District Court